Case this morning, Khan v. Midwestern University Mr. Lovarczyk May it please the court. My name is David Lovarczyk and I represent Ayesha Khan in this current case. I think a rendition, a quick rendition of some of the pertinent facts is necessary to whether or not Mrs. Khan is a... Mr. Lovarczyk, you don't have a lot of time. Believe you me, we've read these briefs. Okay. Before becoming pregnant, how many classes had she passed and how many had she failed? She had passed all, well there's block one and block two courses. She had failed three of her courses and a fourth course she was forced to withdraw per the PCP's demand. She ultimately passed all of her first course, all of her block one courses. And my understanding is that there was 11 courses in block two. She passed all of them except three. Which are... But is that Midwestern's policy? That a student could be expelled after failing three courses? It is their policy, Your Honor, but they also have a policy of allowing students to retake those courses and sort of putting off the otherwise qualified determination if there's extenuating circumstances. Here, the plaintiff's husband suffered a near-death experience and she had to take quite a bit of time off to care for him. So the Midwestern rightfully decided that she had sufficient extenuating circumstances to warrant taking those courses off, courses again, and see if she could pass them. And pass them she did. And she thereafter took her course, her, I'm sorry, block two courses, and she wasn't failing at the time when she asked for accommodations. This was, again, in March of 2013. It was contested by the court and also by the Midwestern that she had asked for these accommodations at a point of no return. However, if you remember from the record, PCPs are held for failing students. They held a PCP in March. She wasn't invited. She was invited to the May PCP. Also when she asked for those accommodations, many of which were not met, it was mathematically possible for her to pass all of her classes. She was within, and ultimately she was within just a couple percentage points of passing all three of those courses, even though Midwestern failed to provide her with some of the basic accommodations that even their own school policy indicates is permissible for students, and that is a quiet room as well as an extended amount of time to take tests. So getting back to whether or not. Would I be wrong if I thought, after reading all of these briefs, that Ms. Kahn failed more of her medical school classes than she passed? That wouldn't be my understanding if she passed 11 courses. She passed the majority of her courses. After failing some of them and then taking them again, it seems to me. She didn't fail all of her courses her first year. She only failed three of them, at least one she was forced to be suspended from, and I think three she passed. So the three that she didn't pass, she was allowed to take over, which she passed. The one that she was suspended from before she could even take the course, she also passed. So then it was smooth sailing for her until she had this pregnancy. She was not, there had been, she had not attended any PCPs, the school had not determined she was irrevocably failing, and the school at that juncture chose not to accommodate her. They did not give her the extra time to take her exams, they did not give her a quiet study room, and they gave her a tutor that did not meet with her. Well, didn't meet with her because they couldn't agree on times. Right, well there's a question of fact, there's a difference that I don't think could be resolved on summary judgment as to whether or not he made himself available, and she also asked for a new tutor that would be more accommodating, but that was never granted. So, going back to where I left off, I think that the district court jumped the gun here because in March, the court couldn't, or the school couldn't determine whether she was otherwise, or I'm sorry, in May, couldn't determine whether she was otherwise qualified because during that three-month period where she asked for accommodations, she wasn't given it. However, for the period of time preceding that, she had passed all of her courses, 11, and I don't think that, I think, I don't see how a reasonable jury could never conclude that she's otherwise qualified in the absence of those reasonable accommodations, especially since she was so close to passing without the accommodations. Some other issues that came up in the brief is that, and the opinion, was that the district court mentioned that accommodation requests were only made for pharmacology, which is simply not true. The accommodation request came in the form of a letter from her physician, Dr. Gerald Farvey. It does not specify that she only wants accommodations for pharmacology and not the other two classes, or any of the other classes she was taking for that matter. It just says she needs more time on exams, she needs a private room, tutoring, a temporary leave, and that's all that it states. It doesn't state that she only needs it, she only needs accommodations for one course. So that was a factual, conclusions are only as good as their premises, so the conclusion the court reached in that instance was incorrect. Also, she gave, she followed the proper procedures for asking for an accommodation. The proper procedure was to give and request the accommodation of the dean. She did this, and the dean told her no. She turned down many of the accommodations, including the extra time and the quiet room, and her explanation was that pregnancy or symptoms thereof is not the type of accommodation that they make, not the kind of condition that they make accommodations for. And again, I don't see how the recommendations she asked, accommodations rather, she asked for were not reasonable, since the school itself, pages 200 to 201 of the record, indicate that those are accommodations they provide students. So going back to the standard here, which was enunciated and relied on quite heavily by the court, it was discussed in Anderson versus the University of Wisconsin, and first of course they discussed what the typical standard is in these cases, which is whether or not a person is qualified in spite of his handicap with reasonable accommodation. And of course, we can't answer that question because the reasonable accommodations here were not made. As a side note, I believe in the record or one of the briefs, they argue that she didn't a psychiatrist regarding her condition and that a general physician isn't enough. While putting aside the fact that that's weighing evidence, which we're not supposed to be doing on summary and judgment, Mrs. Kahn contends that she shut the door on that potential when she said that they do not accommodate pregnancies per se. So it wouldn't have done her any good to go get any sort of extra evidence of a need for accommodation by a psychiatrist. But as an aside, I think we can all take judicial notice of the obvious, and that is primary care physicians do treat women who are pregnant, do prescribe medication for anxiety and depression. It's not just psychiatrists that do that. Sir, your time is up, Counselor. Thank you, Your Honor. Do I have any time remaining in rebuttal or am I done? Ms. McLeod? Thank you. Barbara McLeod on behalf of Appley Defendant Midwestern University. May it please the Court. The district court below did not err in granting summary judgment in favor of Midwestern University. Irrespective of Ms. Kahn's theories of discrimination under the Rehabilitation Act, she has to show, as a matter of law, that she is otherwise qualified, with or without accommodation, to meet Midwestern's academic standards. The only issue here is whether or not she is, in fact, qualified, and the district court, looking at all of the evidence, determined that she was not and that the facts that Ms. were not material enough to preclude the district court from granting summary judgment in favor of Midwestern. I think the briefing is very clear. There really are no novel issues here before the court, and I would just like to take a minute to address a few of the facts purported by Plaintiff in his argument just now and clarify a few things. The record shows, in fact, that by the time Ms. Kahn requested accommodations, it was late March, Midwestern operates on a quarter system. By late March, the fall quarter had come and gone, the winter quarter had come and gone, and we were now in the spring quarter. Of the three courses that Ms. Kahn failed, those courses were covered the fall quarter, the spring quarter, the winter quarter, and the spring quarter. So as to the issue of why she wasn't in front of the PCP in March, it's because the three courses that she failed, they had not concluded yet. What is in the record and very clear is that by the time she did request those reasonable accommodations, she had already failed seven out of nine exams in pharmacology. She only had two exams left to take. One, she asked to be rescheduled because she was unable to make it through. She failed seven but didn't take the other two. She didn't rise to the height of becoming a failure. Right, but by the time that she requested the accommodation, of the nine exams that were required in pharmacology, seven had come and gone and she had already failed those. She took them and failed. She took them and failed. In the other two courses, by the time she requested accommodation, she had failed two, three of five in one, and I believe three and six in another. So by the time we get to the point where she's requesting accommodation, she has already shown a pattern consistent with failures that she accumulated in her first block. And I think what's evident here and what the district court focused on is that she presented no genuine issue of material fact that with or without the accommodations, she would have passed the three courses that she failed, which would have- Ms. McLeod, bottom line, how many did she fail? How many did she pass? She failed six total courses, which amounted to 13 failure equivalents. Under Midwestern policy, when a student accumulates three or more failure equivalents, they can be dismissed by the university because they have not met the academic standards that would allow continuing participation in the program. How many did she pass? She passed the second- In her block one, when she retook all of her courses, she passed those the second time around, which I believe were 12 courses. And in block two, also 12 courses, she passed nine but failed three. And recall that the way Midwestern accounts for these is not by credit hour, but by failure equivalents. And failure equivalents are most easily described as, if you have a course that's only in one quarter, then that's one failure equivalent. If a course takes two quarters and you fail it, that's two failure equivalents. If a course spans three quarters, that's three failure equivalents. So Ms. Kahn had her four failure equivalents from block one, but in block two, she had nine failure equivalents. So in other words, she failed the three courses in block two that spanned all three quarters. And after how many equivalents are you asked to leave? After failing how many equivalents? The policy is that after three failure equivalents, you can be dismissed from the university. Okay, so you're saying after three, you can be dismissed, and you're saying that she failed 13. That's correct. Okay. So I can certainly spend more time pointing to the record to where Ms. Kahn's representation of the facts are inconsistent  but the district court, I believe, adequately addressed that and adequately pointed to the fact that Ms. Kahn's interpretation of the facts still were not material and did not result in her meeting her prima facie case, which is on the prong of otherwise qualified. And with that, unless there's other questions from the court, I would just request that they affirm. Thank you. Thank you very much, counsel. Thanks again to both counsel. That concludes the arguments for this morning, and the court will be in recess. Thank you.